# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARMEN IOVINO and TOPNOTCH
SERVICES, INC.,

     Plaintiffs

v.

AMTRUST FINANCIAL SERVICES, INC.
and SECURITY NATIONAL INSURANCE
COMPANY,

     Defendants

Case No.: 2:22-cv-01974-APG-VCF

**Order (1) Granting in Part the Defendants'
Motions to Dismiss, (2) Granting in Part
the Plaintiffs' Motion to Amend, and
(3) Setting a Deadline to File a Second
Amended Complaint**

[ECF Nos. 14, 26, 32]

Plaintiff Carmen Iovino was injured in a car crash while driving a company truck for his employer, plaintiff TopNotch Services, Inc. The driver who caused the crash is unknown, so the plaintiffs sought benefits under TopNotch's insurance policy with defendant Security National Insurance Company (SNIC) for underinsured/uninsured motorist (UIM) coverage. Iovino alleged that he sustained injuries well above the policy's $1 million limit, but was paid less than half of the benefits that he claims are due. The plaintiffs thus sue SNIC and its parent company, AmTrust Financial Services, Inc. (AmTrust Financial), for breach of contract, breach of the covenant of good faith and fair dealing, bad faith, unfair trade practices, constructive trust and unjust enrichment, breach of fiduciary duty, fraud, and civil conspiracy.

AmTrust Financial and SNIC move to dismiss, arguing that all claims except breach of contract should be dismissed for a variety of reasons. Additionally, AmTrust Financial argues that all claims against it should be dismissed because it is not the insurer, SNIC is. Iovino opposes and moves to amend to add another AmTrust entity as a defendant: AmTrust North America, Inc. Iovino contends that AmTrust North America acted as SNIC's claims adjustor,

and thus should be a defendant.  SNIC and AmTrust Financial oppose, arguing that SNIC is the only proper defendant because it is the insurer.

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions.  I grant in part the defendants' motions to dismiss and the plaintiffs' motion to amend.

# I. ANALYSIS

In considering a motion to dismiss, I take all well-pleaded allegations of material fact as true and construe the allegations in the light most favorable to the non-moving party. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

AmTrust Financial attaches to its motion to dismiss a copy of the insurance policy. ECF No. 14-2.  I may consider the policy even though it was not attached to the complaint without converting the motion to dismiss into one for summary judgment if the policy's "authenticity is not contested and the plaintiff's complaint necessarily relies" on it. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (simplified).  The plaintiffs do not contest the authenticity of the insurance policy and their claims depend on the policy.  I therefore consider the policy in ruling on the motions to dismiss.

/ / / /

/ / / /

2

**A.  Breach of the Covenant of Good Faith and Fair Dealing and Bad Faith**

SNIC[1] argues that to the extent this is a claim for a contractual breach of the covenant of good faith and fair dealing, it is duplicative of the breach of contract claim.  It contends that to the extent it is a claim for tortious breach of the covenant, also known as bad faith, then the plaintiffs have not adequately alleged anything other than a genuine dispute over the value of their insurance claim.  SNIC asserts that the amended complaint does not allege facts to plausibly show that SNIC knew or recklessly disregarded that it was unreasonable to refuse to pay more than the $475,000 it agreed to pay.  The plaintiffs respond that they have adequately alleged the defendants knew Iovino's insurance claim was valued well above the policy limit but refused to pay the limit and have not explained the basis for their claim valuation.

1.  Bad Faith

Under Nevada law, an insurer breaches the duty of good faith when it refuses "without proper cause to compensate its insured for a loss covered by the policy." *U.S. Fid. & Guar. Co. v. Peterson*, 540 P.2d 1070, 1071 (Nev. 1975).  An insurer is without proper cause to deny a claim when it has an "actual or implied awareness" that no reasonable basis exists to deny the claim. *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354-55 (Nev. 1986). An unreasonable delay in payment can also constitute bad faith. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) ("[T]his court has addressed an insurer's breach of the implied covenant of good faith and fair dealing as the unreasonable denial or delay of payment of a valid claim").  However, an "insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1053-55

---

[1] AmTrust Financial did not move to dismiss this claim.

1 (D. Nev. 2017) (holding the insurer acted reasonably in handling an insured's claim, despite

2 delaying payment several years, because there was a reasonable dispute about the extent of the

3 insured's injuries and whether those injuries were caused by the accident).

4       Taking the amended complaint's allegations as true, the plaintiffs have plausibly alleged

5 a bad faith claim.  The subject insurance policy has a limit of $1 million. ECF No. 8 at 3.  Iovino

6 also had his own personal insurance policy with another insurer with a limit of $100,000 in

7 excess of the defendants' policy. *Id.* at 3-4.

8       The amended complaint alleges that because of the accident, Iovino has undergone

9 multiple surgeries, suffered great pain, and "was determined to have a whole person impairment

10 of 35%." *Id.* at 3.  He alleges that he incurred over $228,000 in medical bills; over $1.4 million

11 in pain and suffering, disfigurement, loss of enjoyment of life, and loss of household services;

12 and will require future treatment. *Id.*  But AmTrust Financial paid only $475,000. *Id.* at 4.  After

13 that payment, Iovino sent a supplemental demand with additional records showing damages

14 between $1.6 to $2.4 million to both his excess insurer and AmTrust Financial. *Id.*  In response,

15 his excess insurer tendered the $100,000 limit to him, and thus valued his claim at over $1.1

16 million. *Id.*  But AmTrust Financial did not respond and did not request any additional

17 information, though Iovino twice requested a response. *Id.*

18       The parties thereafter participated in a mediation. *Id.*  During the mediation, AmTrust

19 Financial offered an additional $25,000. *Id.* at 4-5.  A few weeks later, AmTrust Financial

20 offered $50,000 but did not explain the basis for that amount despite the plaintiffs' request for an

21 explanation. *Id.* at 5.  The plaintiffs allege that the defendants had all information necessary to

22 determine the claim's value exceeded the policy limits but refused to pay the full amount. *Id.* at

23 5.

4

The plaintiffs have adequately alleged that they provided the defendants with information showing the policy limit was exceeded by a substantial amount.  The excess insurer evaluated Iovino's claim not only as exceeding the defendants' $1 million policy limit but its own on top of that.  AmTrust Financial had the same claim information as the excess insurer.  Although the defendants are not bound by another insurer's claim evaluation, it is a reasonable inference that the defendants had an actual or implied awareness that Iovino's claim exceeded $1 million.  Yet the defendants paid only $475,000 and offered only $50,000 more.  Further, the plaintiffs have alleged that the defendants have refused to explain the basis for their valuation.  A reasonable inference from that refusal is that the defendants have no good faith basis for it.  I therefore deny the motion to dismiss this claim.

## 2.  Contractual Breach of the Covenant of Good Faith and Fair Dealing

A contractual breach of the implied covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract." *Hilton Hotels Corp. v. Butch Lewis Prod., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).  This cause of action is different from one for breach of contract because it requires literal compliance with the terms of the contract. *See Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 931 (D. Nev. 2010).

The plaintiffs have not alleged that the defendants literally complied with the policy's terms but took other action to deliberately countervene the policy's spirit.  Rather, they allege the defendants breached the policy and did so in bad faith.  I therefore dismiss this claim.  However, because it is not clear that amendment would be futile, I grant the plaintiffs leave to amend if facts exist to do so. *See Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109,

1118 (9th Cir. 2013) ("As a general rule, dismissal without leave to amend is improper unless it

is clear that the complaint could not be saved by any amendment." (simplified)).

### B.  Unfair Trade Practices

The defendants argue that this claim fails because it merely recites the statutory

provisions without factual content.  They contend that the only factual allegation about sending a

supplemental demand and receiving no response is belied by other allegations in the amended

complaint that the parties thereafter attended a mediation and AmTrust Financial offered an

additional $50,000.  They also argue that the amended complaint does not allege that an officer,

director, or department of the insurer knowingly permitted the challenged practice.

The plaintiffs respond that they have adequately alleged that the defendants failed to

explain the basis for their offers, did not investigate the plaintiffs' claim, and forced the plaintiffs

to file suit to recover benefits under the policy.  They argue that the defendants intentionally

ignored the claim's true value and attempted to pay only half of what was due despite having all

information needed to show the claim was worth the policy limit.  And they argue that they

requested a basis for the $50,000 offer and received no response.  Finally, they contend that they

do not know the names and positions of the various individuals involved in handling their claim,

so they cannot allege that an officer or director knowingly permitted these practices because that

information is within the defendants' control.

The plaintiffs allege the defendants engaged in various prohibited practices under

Nevada's unfair claims handling practices statute, Nevada Revised Statutes (NRS) § 686A.310.

ECF No. 8 at 8-9.  However, an insurer "shall not be held guilty of having committed any of the

acts prohibited by . . . 686A.310 . . . by reason of the act of any agent, solicitor or employee not

an officer, director or department head thereof, unless an officer, director or department head of

the insurer has knowingly permitted such act or has had prior knowledge thereof."  NRS § 686A.270.

The plaintiffs admit they have not alleged that an officer, director, or department head knowingly permitted the practices or acts about which they complain. ECF No. 28 at 11.  I therefore grant the defendants' motion to dismiss this claim, with leave to amend.  As part of that amendment, I grant the plaintiffs leave to amend to address the defendants' critique of the lack of factual allegations or the contradictory nature of some allegations supporting the amended complaint's assertion that the defendants violated seven different provisions of the unfair claims handling practices statute.  I note, for example, that in their opposition, the plaintiffs do not attempt to explain how the amended complaint adequately alleges the second and sixth enumerated statutory provisions, i.e., that the defendants failed to "[a]dopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies," or attempted "to settle a claim by an insured for less than the amount to which a reasonable person would have believed he or she was entitled by reference to written or printed advertising material accompanying or made part of an application." ECF Nos. 8 at 8-9; 15 at 6-8; 28 at 8-11.

**C.  Constructive Trust and Unjust Enrichment**

The defendants argue this claim fails because there is no unjust enrichment where the parties have an express contract, and there is no basis for a constructive trust because they are not retaining funds that by law belong to the plaintiffs.  The plaintiffs respond that the defendants' refusal to investigate the claim in good faith and retention of the remaining balance due suffices to support a claim for unjust enrichment and constructive trust.

1   "An action based on a theory of unjust enrichment is not available when there is an

2   express, written contract." *Leasepartners Corp. v. Robert L. Brooks Tr. Dated Nov. 12, 1975*,

3   942 P.2d 182, 187 (Nev. 1997) (per curiam).  The amended complaint alleges an express

4   insurance contract which neither side disputes is valid, so unjust enrichment is not an available

5   claim to the plaintiffs.  There is no basis for a constructive trust because that is a remedy for

6   unjust enrichment. *See Bemis v. Est. of Bemis*, 967 P.2d 437, 441 (Nev. 1998) (per curiam);

7   *Balish v. Farnham*, 546 P.2d 1297, 1300 (Nev. 1976).  Moreover, the plaintiffs have not alleged

8   facts to plausibly show that a constructive trust "is essential to the effectuation of justice."

9   *Waldman v. Maini*, 195 P.3d 850, 857 (Nev. 2008) (en banc) (quotation omitted).  Consequently,

10  I dismiss this claim with prejudice because amendment would be futile.

11      **D.  Breach of Fiduciary Duty**

12      The defendants argue that there is no fiduciary relationship between an insurer and its

13  insured beyond the duty of good faith and fair dealing, so this claim is duplicative of the bad

14  faith claim.  The plaintiffs respond that the claims are not duplicative because the bad faith claim

15  is based on an implied covenant in the contract while the breach of fiduciary duty claim is based

16  on the duty an insurer owes to its insured.

17      Under Nevada law, "breach of the fiduciary nature of the insurer-insured relationship is

18  part of the duty of good faith and fair dealing." *Powers v. United Servs. Auto. Ass'n*, 962 P.2d

19  596, 603 (Nev. 1998), *opinion modified on denial of reh'g*, 979 P.2d 1286 (Nev. 1999).  This

20  claim is duplicative of the plaintiffs' bad faith claim, so I dismiss it with prejudice because

21  amendment would be futile.

22  / / / /

23  / / / /

**E.  Fraud**

The defendants argue this claim is not pleaded with particularity and the plaintiffs have not alleged justifiable reliance on any misrepresentation.  The plaintiffs respond that they have adequately alleged the defendants misrepresented the true value of the plaintiffs' insurance claim and that the defendants would mediate in good faith.

Federal Rule of Civil Procedure 9(b) requires a party to state with particularity the circumstances constituting fraud, "including the who, what, when, where, and how of the misconduct charged." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quotation omitted).  Additionally, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (quotation omitted).  In sum, the plaintiff "must provide enough detail to give [the defendants] notice of the particular misconduct which is alleged to constitute the fraud charged so that [they] can defend against the charge and not just deny that [they have] done anything wrong." *Id.* at 999 (quotation omitted).

Additionally, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (quotation omitted).  "A plaintiff must identify the role of each defendant in the alleged fraudulent scheme." *Id.* (quotation omitted).  However, a plaintiff may use "collective allegations . . . to describe the actions of multiple defendants who are alleged to have engaged in precisely the same conduct." *Id.*

The amended complaint alleges that AmTrust Financial and SNIC intentionally misrepresented the value of the plaintiffs' claim and tried to make the plaintiffs accept less than

the claim's true value. ECF No. 8 at 12.  The plaintiffs also allege that the defendants intentionally misrepresented that they would negotiate in good faith at a private mediation, but they did not. *Id.*  These allegations lump the defendants together and do not identify who made these representations, when, or how the representations were communicated.  I therefore dismiss this claim, with leave to amend with the requisite particularity as to each defendant.

### F. Civil Conspiracy

The defendants argue that a parent company cannot conspire with its wholly owned subsidiary, and a company cannot conspire with its own employees.  The plaintiffs respond that the defendants jointly planned to deprive the plaintiffs of the full policy limits for their own gain.

The plaintiffs allege that AmTrust Financial is SNIC's parent company. ECF No. 8 at 3. A parent company cannot conspire with its subsidiary and a company generally cannot conspire with its own employees. *See Nanopierce Techs., Inc. v. Depository Tr. & Clearing Corp.*, 168 P.3d 73, 85, n.49 (Nev. 2007) (en banc); *Collins v. Union Fed. Sav. & Loan Ass'n*, 662 P.2d 610, 622 (Nev. 1983).  I therefore dismiss this claim without prejudice to amend if facts exist to do so.

### G. Proper Parties

AmTrust Financial argues that it is not a proper party because it is not the insurer that issued the policy.  AmTrust Financial asserts that SNIC is its subsidiary, but it is not liable for the acts of its subsidiary absent allegations that would support piercing the corporate veil.

The plaintiffs respond that AmTrust Financial is on the first page of the policy, an AmTrust entity issued the $475,000 check, and an AmTrust Financial claims adjustor communicated with the plaintiffs regarding this claim.  The plaintiffs contend that AmTrust Financial was acting as SNIC's agent or vice versa, such that both are proper defendants. / / / /

Generally, "no one is liable upon a contract except those who are parties to it." *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1998) (per curiam), *as amended* (Feb. 19, 1999) (quotation omitted).  "However, according to a well-established exception to this general rule, where a claims administrator is engaged in a joint venture with an insurer, the administrator may be held liable for its bad faith in handling the insured's claim, even though the organization is not technically a party to the insurance policy." *Id.* (quotation omitted).  Evidence of a joint venture may include that the administrator "developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, . . . assisted [the insurer] in the development of [policy language]," and shared in the insurer's profits. *Id.*

The insurance policy states that the "insurance is provided by the company designated on the declarations page." ECF No. 14-2 at 2, 6.  The declarations pages list only SNIC's name and address. *Id.* at 10-14.  Consequently, it appears that SNIC is the insurer.

However, some of the policy's pages have AmTrust Financial and AmTrust North America logos on them and the insured is directed to AmTrust North America for policyholder service. *Id.* at 2, 6.  The plaintiffs allege that they submitted their claim to AmTrust Financial, that AmTrust Financial paid $475,000, and that AmTrust Financial offered additional amounts at the mediation and thereafter. ECF No. 8 at 4-5.  The defendants identify AmTrust North America as SNIC's "authorized administrator." ECF No. 36-2.  At least one of the claims adjustors identified herself as an employee of AmTrust Financial. ECF No. 32 at 11.  The defendants' initial disclosures identify several people from all three of the companies as relevant witnesses in this case, and the defendants have changed their disclosures regarding which entity employs which employees. *Id.* at 14-23, 32-42.

/ / / /

1    The precise relationship between AmTrust Financial, SNIC, and AmTrust North America

2  is unclear from the policy, the amended complaint's allegations, and the defendants'

3  representations.  Given the complaint's allegations and the other available information, it is

4  premature to conclude that the plaintiffs cannot state a claim against AmTrust Financial and

5  AmTrust North America under *Albert H. Wohlers & Co.*'s reasoning. *See Barbier v. United*

6  *Servs. Auto. Ass'n*, No. 2:20-cv-00561-KJD-EJY, 2021 WL 694809, at *2 (D. Nev. Feb. 23,

7  2021) (concluding that an adjustor was not fraudulently joined where the adjustor's logo was on

8  the insurer's materials and the adjustor "made an offer to settle the claim prior to litigation,

9  adjusted the claim, is involved in determining premiums, and collects premium payments from

10  clients"); *Gary G. Day Constr. Co., Inc. v. Clarendon Am. Ins. Co.*, No. 2:04-cv-01720-RLH-

11  RJJ, 2006 WL 8441627, at *3 (D. Nev. Feb. 14, 2006) (denying a motion to dismiss where the

12  plaintiff alleged that a claims administrator "had full, complete and final authority to deny

13  claims" and engaged in the bad faith conduct).

14    I therefore grant the plaintiffs' motion to amend to add allegations that would support

15  including AmTrust North America as a defendant.  However, I deny leave to file the proposed

16  second amended complaint attached to the plaintiffs' motion because it suffers from the same

17  deficiencies identified in this order.  The plaintiffs are granted leave to add in the second

18  amended complaint factual allegations that would support both AmTrust defendants' liability

19  under *Albert H. Wohlers & Co.*[2]

20  / / / /

21  / / / /

22

23

---

[2] Neither party has addressed whether adding AmTrust North America will destroy diversity jurisdiction, so I do not address that issue at this time.

## II.  CONCLUSION

I THEREFORE ORDER that the defendants' motions to dismiss **(ECF Nos. 14 and 26) are GRANTED in part**.

I FURTHER ORDER that the plaintiffs' motion to amend **(ECF No. 32) is GRANTED in part**.

I FURTHER ORDER that the plaintiffs may file a second amended complaint by September 29, 2023.

DATED this 30th day of August, 2023.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

13