# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARMEN IOVINO,

     Plaintiff

v.

AMTRUST FINANCIAL SERVICES, INC., et al.

     Defendants

Case No.: 2:22-cv-01974-APG-NJK

**Order Granting in Part the Defendants' Motions to Dismiss**

[ECF Nos. 52, 67]

     Plaintiff Carmen Iovino was injured in a car crash while driving a company truck for his employer, TopNotch Services, Inc.  The driver who caused the crash is unknown, so Iovino sought benefits under TopNotch's insurance policy with defendant Security National Insurance Company (SNIC) for underinsured/uninsured motorist (UIM) coverage.  Iovino alleged that he sustained injuries well above the policy's $1 million limit, but was paid less than half of the benefits that he claims are due.  Iovino sues SNIC; its parent company, AmTrust Financial Services, Inc. (AmTrust Financial); and its claim processor, AmTrust North America (AmTrust N.A.), for breach of contract, breach of the covenant of good faith and fair dealing, unfair trade practices, fraud, and civil conspiracy.

     The defendants move to dismiss Iovino's fraud and civil conspiracy claims, arguing that the fraud claim is implausible and insufficiently alleged and that the civil conspiracy claim is legally impossible.[1]  Iovino responds that he has plausibly alleged fraud and that his civil

---

[1] AmTrust Financial and SNIC filed a joint motion to dismiss before AmTrust N.A. was served. ECF Nos. 52; 61.  Subsequently, AmTrust N.A. moved to dismiss, raising the same arguments. ECF No. 67.

1  conspiracy claim cannot be dismissed without discovery.  The defendants reply that the

2  information Iovino seeks is not discoverable because it is protected by attorney-client privilege.

3          The parties are familiar with the facts, so I repeat them here only as necessary to resolve

4  the motions.  I grant the defendants' motions to dismiss in part.  I dismiss with prejudice all of

5  Iovino's fraud claim except his claim that the defendants fraudulently induced him to participate

6  in a mediation, which I allow to move forward.  I also dismiss Iovino's civil conspiracy claim

7  with prejudice.[2]

8  **I.      ANALYSIS**

9          In considering a motion to dismiss, I take all well-pleaded allegations of material fact as

10  true and construe the allegations in the light most favorable to the non-moving party. *Kwan v.*

11  *SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of

12  legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation*

13  *v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient

14  factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550

15  U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a

16  formulaic recitation of the elements of a cause of action." *Id.* at 555.

17          The defendants attach to their motions to dismiss a copy of the insurance policy. ECF

18  Nos. 52-2;67-2.  I may consider the policy even though it was not attached to the complaint

19  without converting the motion to dismiss into one for summary judgment if the policy's

20  "authenticity is not contested and the plaintiff's complaint necessarily relies" on it. *Lee v. City of*

21

22  _____

23  [2] The defendants also ask me to strike various allegations from Iovino's complaint that support
his fraud and civil conspiracy claims. ECF Nos. 53, 68.  Magistrate Judge Ferenbach denied
those motions without prejudice pending my decision on the motions to dismiss, so I do not
address the defendants' requests to strike in this order. ECF No. 75.

*Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (simplified).  The plaintiffs do not contest the insurance policy's authenticity and their claims depend on it.  I therefore consider the policy in ruling on the motions to dismiss.

### A.  Fraud

In his Second Amended Complaint (SAC), Iovino characterizes his fraud claim as a singular claim against the defendants, though within the claim he alleges a variety of distinct, allegedly fraudulent acts, which I discuss individually below.  The defendants move to dismiss the fraud claim in its entirety, arguing that the representations Iovino bases his claim on are implausible and that he did not sufficiently allege detrimental reliance.  They also argue that Iovino lumps all defendants together in his claim, not meeting the heightened particularity requirements of Federal Rule of Civil Procedure 9(b).

To state a fraud claim, a plaintiff must allege: "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021).  To properly plead this fraud claim under Rule 9(b), Iovino must "state with particularity the circumstances constituting fraud."  To meet this heightened pleading standard, Iovino must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (simplified).  To do this, Iovino needs to provide the "who, what, when, where, and how of the misconduct charged." *Id.* (simplified).

I previously dismissed Iovino's fraud claim without prejudice because he lumped the defendants together and did not identify who made what representation to Iovino or when or how

3

1   those representations were communicated to him. ECF No. 41 at 10.  I granted Iovino leave to

2   amend to provide "the requisite particularity as to each defendant." *Id.*  Because I previously

3   granted Iovino leave to amend, now my discretion to dismiss without leave to amend is

4   "particularly broad." *Ecological Rts. Found. v. Pac. Gas and Elec. Co.*, 713 F.3d 502, 520 (9th

5   Cir. 2013) (quotation omitted).

6               1.   ***Formation of the Insurance Contract***

7        Iovino alleges that the defendants acted fraudulently during the formation of the

8   insurance contract.  He alleges that the defendants intentionally misrepresented that "they would

9   pay all sums the insured is legally entitled to recover as compensatory damages from the owner

10   or driver of an uninsured motor vehicle." ECF No. 49 at 22 (quotations omitted).

11        The defendants move to dismiss this claim, arguing that because Iovino himself did not

12   enter into the insurance contract with SNIC and is not a named insured on the policy, he cannot

13   assert fraud.  They also argue that fraud requires that SNIC intended not to fulfill its contractual

14   obligations at the time it entered into the contract, which Iovino does not allege.  Additionally,

15   the defendants argue that SNIC's insurance policy language cannot form the basis of Iovino's

16   fraud claim because Iovino has not established "legal entitlement." ECF No. 52 at 4.  Finally, the

17   defendants argue that Iovino cannot prove how he relied on the contract language to his

18   detriment.

19        Iovino responds that the defendants fraudulently induced Iovino, via TopNotch, to

20   purchase an insurance policy from them, then intentionally acted to deprive Iovino of the

21   benefits of this policy.  He also argues that it does not matter that he was not the named policy

22   holder because he is claiming that the defendants acted fraudulently while handling his claim and

23   he relied on them to act in good faith during the claims handling process.  He also argues that

Rule 9(b)'s particularity standard is relaxed when the facts and evidence a claim is based on are only available to the defendants, as is the case for his claim.

Iovino has not addressed my previous instruction that he must particularly plead what each defendant did.  Here, Iovino alleges that all the defendants intentionally made misrepresentations at the time of contracting, but he also alleges that only SNIC issued the policy to TopNotch, indicating that only SNIC could have made a fraudulent representation at the time of contracting. ECF No. 49 at 3-4.  Iovino also has not provided the "who, what, when, where, and how" of this misrepresentation, so he fails to meet the heightened pleading standard required for fraud claims.  This claim also fails on the merits.  The defendants made the allegedly false representation to Iovino's employer, not to Iovino, and Iovino has not alleged any detrimental reliance on the false representation made to his employer.  I dismiss this portion of Iovino's fraud claim with prejudice.

### 2.  *Handling of the Claim*

Iovino alleges that the defendants fraudulently misrepresented the value of his claim to him while they were handling it and "willfully, intentionally and fraudulently tried to coerce [him] into accepting an amount less than the true value of his claim." ECF No. 49 at 21.  Iovino alleges that the defendants knew the value of his claim but "intentionally ignored the information" supporting its value and intentionally undervalued it in their representations to him by "hundreds of thousands of dollars." *Id.* at 21-23.

The defendants argue that this is a mischaracterized factual dispute about the value of Iovino's claim, and that "[f]ailure to agree on value is not misrepresenting facts." ECF No. 52 at 6.  Iovino responds that his claim is based upon the defendants' "fraudulent conduct while handling and evaluating his claim." ECF No. 59 at 16.

1    Iovino's allegation fails for lack of particularity.  He does not identify which defendant

2  misrepresented the value of his claim to him nor when or how this misrepresentation occurred.

3  Additionally, Iovino does not plausibly allege that he detrimentally relied on any alleged

4  misrepresentation because he rejected all of the defendants' offers.  I therefore dismiss this

5  portion of Iovino's fraud claim with prejudice.

6         3.   *Legal Representation*

7    Iovino argues that the defendants "intentionally conceal[ed] their bad faith conduct

8  through retained counsel during the pre-litigation claims process," using counsel to "refus[e] to

9  provide the basis, rationale and calculations for their position that $475,000 fully compensates

10  [Iovino] for his claim." ECF No. 49 at 22.  He also argues that the defendants used counsel to

11  fraudulently retain a rebuttal expert, force Iovino into litigation, and refuse to re-evaluate

12  Iovino's claim.

13    The defendants argue that this is a valuation dispute and the defendants did not make any

14  misrepresentations to Iovino.  Iovino responds that discovery will allow him to access

15  information the defendants are shielding with attorney-client privilege, and this information will

16  prove his fraud claim.  The defendants reply that the information Iovino seeks is not available

17  through discovery because it is protected by attorney-client privilege.

18    This claim fails both as a matter of pleading and on the merits as Iovino has not alleged

19  with particularity any fraudulent behavior by the defendants' counsel.  Iovino has not alleged

20  how hiring experts and proceeding to litigation are fraudulent acts.  And the communications

21  Iovino seeks are protected by attorney-client privilege and not discoverable.  Also, Iovino has not

22  identified how he detrimentally relied upon any of the defendants' allegedly false

23

1  representations, given that he rejected their offers.  I dismiss this portion of Iovino's fraud claim

2  with prejudice.

3          4.  *September 1, 2022 Mediation*

4          Finally, Iovino alleges that the defendants intentionally misrepresented that they would

5  negotiate with him in good faith during the September 1, 2022 mediation.  He alleges that the

6  defendants did not have the authority to make him an offer over $25,000 and agreed to negotiate

7  with him even though they knew Iovino was asking for over $1.6 million. ECF No. 49 at 23.

8  Iovino alleges that he detrimentally relied on the defendants' assertions that they would negotiate

9  in good faith, and his reliance further delayed his claim process. *Id.*  He also alleges that at the

10 mediation, they intentionally misrepresented the value of his claim to induce him to waive the

11 remainder of his claim. *Id.*

12         The defendants argue that they made Iovino an offer at the mediation, and Iovino's

13 allegations indicate a value disagreement, not an intentional misrepresentation by the defendants.

14 The defendants also argue that Iovino has not, and cannot, plausibly allege detrimental reliance

15 because he rejected the defendants' offer at the mediation.  Iovino responds that he relied on the

16 defendants to act in good faith and not intentionally undervalue his claim.

17         Iovino has alleged this claim with sufficient particularity.  He alleges that the defendants

18 fraudulently represented to him that they would engage in the mediation in good faith, but they

19 knew that Iovino valued his claim between $1,659,876.10 and $2,442,355.10 and they were

20 prepared to offer him only $25,000.  He alleges that despite the discrepancy between what the

21 defendants were prepared to offer and what he was asking for, the defendants still represented to

22 him that they would negotiate with him in good faith.  Iovino also alleges that this promise

23 induced him to participate in the mediation.  Iovino alleges that he detrimentally relied on the

1   defendants' representation by going through with the mediation, further delaying litigation.

2   Because Iovino has plausibly alleged this portion of his fraud claim, I allow it to proceed.

3       **B.  Civil Conspiracy**

4       In his SAC, Iovino alleges that the defendants and the law firms that formerly represented

5   them conspired to deprive Iovino of his full policy limit.  He alleges that the defendants and their

6   attorneys conspired to improperly evaluate his claim and refused to pay him the claim's full

7   value so that they could retain the money remaining on the claim for their own financial gain.

8   He also alleges that the defendants intentionally hired these law firms to conceal their bad faith

9   conduct and that these law firms empowered the defendants to intentionally ignore information

10  supporting Iovino's claim, refuse to timely investigate the claim, delay making determinations

11  about the claim, and refuse to provide Iovino with an adequate basis for their damages

12  determination.

13      The defendants argue that it is legally impossible for a civil conspiracy to exist between

14  AmTrust Financial, SNIC and AmTrust N.A. because Iovino alleges that SNIC and AmTrust

15  N.A. are AmTrust Financial's wholly owned subsidiaries.  The defendants also argue that it is

16  legally impossible for a client to conspire with its legal counsel acting within the scope of the

17  attorney-client relationship.  Iovino responds that because the defendants have not disclosed the

18  scope and nature of the law firms' representation for the defendants, I cannot determine that all

19  the attorneys' actions were properly within the scope of the relationship.

20      Under Nevada law, "[a]n actionable civil conspiracy consists of a combination of two or

21  more persons who, by some concerted action, intend to accomplish an unlawful objective for the

22  purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nev.,*

23  *Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (quotation omitted).  Federal

1   Rule of Civil Procedure 9(b) "imposes heightened pleading requirements" for civil conspiracy

2   claims "where the object of the conspiracy is fraudulent." *Swartz v. KPMG LLP*, 476 F.3d 756,

3   765 (9th Cir. 2007).

4          A parent company cannot conspire with its subsidiary and a company generally cannot

5   conspire with its own employees. *See Nanopierce Techs., Inc. v. Depository Tr. & Clearing*

6   *Corp.*, 168 P.3d 73, 85 n.49 (Nev. 2007) (en banc); *Collins v. Union Fed. Sav. & Loan Ass'n*,

7   662 P.2d 610, 622 (Nev. 1983).  Also, an agent cannot conspire with its principal when the agent

8   acts in its official capacity on behalf of the principal. *Collins*, 662 P.2d at 622.  "[T]he lawyer is

9   the client's agent." *Estate of Adams by and through Adams v. Fallini*, 386 P.3d 621, 625 (Nev.

10   2016); *see also C.I.R. v. Banks*, 543 U.S. 426, 427 (2005) (describing the lawyer-client

11   relationship as "a quintessential principal-agent relationship").

12          Iovino's civil conspiracy claim fails both as a matter of pleading and as a matter of law.

13   Iovino has not sufficiently pleaded the particularized roles that the defendants played in the

14   alleged conspiracy to defraud him.  And as I pointed out in my previous order, parent companies

15   cannot conspire with their wholly owned subsidiaries, so the defendants cannot conspire with

16   each other because Iovino alleges that AmTrust Financial is the parent company of SNIC and

17   AmTrust N.A. ECF No. 41 at 10.  Also, attorneys cannot conspire with their clients when they

18   are acting within the scope of their agency relationship.  Iovino alleges that the attorneys did not

19   come to the decision he wanted regarding the valuation of his claim, that their work delayed his

20   claim recovery process, and that they did not provide him with sufficient rationale for their

21   settlement offers.  None of these allegations plausibly alleges that the defendants' attorneys were

22   acting outside the scope of their representation, so they could not have conspired with the

23   defendants.  I therefore dismiss Iovino's civil conspiracy claim with prejudice.

## II.      CONCLUSION

I THEREFORE ORDER that the defendants' motions to dismiss **(ECF Nos. 52 and 67) are GRANTED in part**, as set forth above.

DATED this 4th day of June, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE