# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARMEN IOVINO,

    Plaintiff

v.

AM TRUST FINANCIAL SERVICES, INC., et al.,

    Defendants

Case No.: 2:22-cv-01974-APG-NJK

**Order Granting in Part Plaintiff's Motion for Summary Judgment, Granting in Part Defendants' Motion for Summary Judgment, and Denying Plaintiff's Motion to Strike**

[ECF Nos. 161, 162, 163]

Plaintiff Carmen Iovino was injured in a car crash while driving a company truck for his employer, TopNotch Services, Inc. The driver who caused the crash is unknown, so Iovino sought benefits under TopNotch's insurance policy with defendant Security National Insurance Company (SNIC) for underinsured/uninsured motorist (UIM) coverage. Iovino alleges that he sustained injuries well above the policy's $1 million limit but was paid less than half of the benefits he claims are due. Iovino sues SNIC; its parent company, AmTrust Financial Services, Inc. (AmTrust Financial); and its claim processor, AmTrust North America (AmTrust N.A.), for breach of contract, breach of the covenant of good faith and fair dealing, unfair claims practices, and fraud.

Iovino moves for summary judgment as to liability on all claims, arguing that the defendants knowingly violated Nevada law by failing to reimburse his medical bills and other expenses covered by workers' compensation. He also argues that the defendants failed to adequately explain how they calculated the payments they made under the policy. AmTrust Financial moves for summary judgment on all claims, arguing that as a parent company it did not exert sufficient control over its subsidiaries to be liable for their actions. All defendants move

for summary judgment on Iovino's bad faith, unfair claims practices, and fraud claims, arguing that Iovino is misinterpreting Nevada laws, they are not required to give a more detailed explanation of the claims paid out, and they negotiated to settle the case in good faith.  The defendants also argue that Iovino cannot show oppression, fraud, or malice to support punitive damages.  Finally, Iovino moves to strike the defendants' answer, arguing that they committed discovery abuses.[1]

The parties are familiar with the facts, so I repeat them here only as necessary to resolve the motions.  I grant Iovino's motion for summary judgment on liability for breach of contract against SNIC and deny his motion for all other claims.  I grant summary judgment to AmTrust Financial on all claims because Iovino has not raised a genuine dispute of material fact showing either an agency relationship or a joint venture with its subsidiary companies.  I grant AmTrust N.A. and SNIC summary judgment as to Iovino's fraud claim and to AmTrust N.A. as to his unfair claims practices claims.  I also grant summary judgment to all defendants on Iovino's bad faith claim to the extent it is based on failure to pay Iovino's medical bills.  I deny the defendants' motion on all other claims and Iovino's motion for sanctions.

## I.  SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

---

[1] Iovino has also filed a motion for summary judgment on SNIC's counterclaim and an objection to Magistrate Judge Koppe's sanctions order. ECF Nos. 201; 202.  I will address these in a separate order.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial.")  I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

**A.  AmTrust Financial**

    1.  Joint venture

AmTrust Financial moves for summary judgment on all claims, arguing that it is the parent holding company of AmTrust N.A. and SNIC and does not have any involvement in developing claims handling policies or administering claims.  It asserts that "AmTrust Financial" is a trade name used by the AmTrust group, including several insurance companies, and therefore its logo appears on emails and policy documents.  Iovino responds that AmTrust Financial owns and retains the profits of SNIC and other insurance companies, the individual claims handlers hold themselves out as AmTrust Financial employees by having its logo on their email signatures, and the AmTrust Financial logo on the claims handling policies shows that AmTrust Financial controls AmTrust N.A.'s day-to-day operations.

Generally, "no one is liable upon a contract except those who are parties to it." *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949, 959 (Nev. 1998) (per curiam), as amended (Feb. 19, 1999) (quotation omitted).  "However, according to a well-established exception to this general

rule, where a claims administrator is engaged in a joint venture with an insurer, the administrator may be held liable for its bad faith in handling the insured's claim, even though the organization is not technically a party to the insurance policy." *Id.* (quotation omitted).  Evidence of a joint venture may include that the administrator "developed promotional material, issued policies, billed and collected premiums, paid and adjudicated claims, . . . assisted [the insurer] in the development of [policy language]," and shared in the insurer's profits. *Id.*

      AmTrust Financial is a holding company and Iovino has not raised a genuine dispute of material fact showing that AmTrust Financial engaged in a joint venture with its subsidiaries. The defendants' Rule 30(b)(6) witness testified that although AmTrust Financial owns 100 percent of SNIC, both companies have their own boards of directors and corporate officers. ECF Nos. 171-14 at 7-9; 178-21 at 7-8.  AmTrust N.A. is also a separate entity owned by AmTrust Financial to administer claims for SNIC and AmTrust Financial's other insurance companies. ECF No. 171-14 at 9-10.  And in response to the name "AmTrust Financial" appearing on TopNotch's SNIC insurance policy, the Rule 30(b)(6) witness testified that "AmTrust Financial is typically used as a trade name." *Id.* at 12; *see also* ECF No. 178-21 at 11 (AmTrust Financial Services, Inc. is not involved in claims operations and "AmTrust Financial" is used as a trade name).  Iovino does not identify facts in the record to show that AmTrust Financial is not a holding company or that it controls the day-to-day operations of AmTrust N.A. and SNIC.

      2.  Agency

      Iovino argues that because AmTrust Financial Services, Inc. appears in the email signatures of AmTrust N.A. employees, the employees represent to the public that they work for AmTrust Financial, thus creating "ostensible agency." ECF No. 171 at 23-24.  The defendants argue that ostensible agency has no application to insurance claims handling and that employees

displaying AmTrust Financial Services, Inc. in their email signature blocks is not sufficient to represent to the public that they work for AmTrust Financial.

Nevada has adopted the ostensible agency doctrine to determine when a hospital may be liable for a non-employee physician's medical malpractice. *See Schlotfeldt v. Charter Hosp. of Las Vegas*, 910 P.2d 271, 275 (Nev. 1996). Ostensible agency "applies when a patient comes to a hospital and the hospital selects a doctor to serve the patient." *Id.* Factors considered in Nevada for ostensible agency are "(1) a plaintiff entrusted themselves to the ostensible principal, (2) the ostensible principal selected the ostensible agent, (3) the plaintiff reasonably believed that the ostensible agent was in fact an employee or agent of the principal, and (4) whether the plaintiff was put on notice that the ostensible agent was in fact an independent contractor." *Mansoor v. Am. Med. Sys., Inc.*, No. 2:08-cv-01117-RCJ-LRL, 2009 WL 10693229, at *4 (D. Nev. Sept. 18, 2009); *Schlotfeldt*, 910 P.2d at 275.

By referring to ostensible agency, Iovino may have meant to invoke apparent authority.[2] To claim apparent authority as a basis for contract formation, Iovino must prove "(1) that he subjectively believed that the agent had authority to act for the principal and (2) that his subjective belief in the agent's authority was objectively reasonable." *PetSmart, Inc. v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 499 P.3d 1182, 1188 (Nev. 2021) (quotation omitted). Additionally, reasonable reliance is a "necessary element" to show apparent authority. *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 261 (Nev. 1997).

Iovino has not identified any case where Nevada has adopted ostensible agency outside of the medical context, and I am unable to locate one. Even if Nevada were inclined to apply the

---

[2] Ostensible agency is a type of apparent authority. *See Schlotfeldt*, 910 P.2d at 275 ("The doctor has apparent authority to bind the hospital because a patient may reasonably assume that a doctor selected by the hospital is an agent of the hospital.").

1  doctrine to insurance claims, it would not establish liability for AmTrust Financial.  Iovino has

2  not identified material facts to show an agency relationship between AmTrust Financial and the

3  other defendants.  And if AmTrust Financial is the ostensible principal, Iovino never entrusted

4  himself to AmTrust Financial for his insurance claim.  Rather, Iovino entrusted himself to SNIC

5  (TopNotch's insurer) and AmTrust N.A. (its claims administrator) so the hospital analogy is

6  inapplicable. *See* ECF No. 164-3 at 2-7.  If Iovino meant to invoke apparent agency to hold

7  AmTrust Financial responsible for the acts of its subsidiaries, he has not raised a material fact

8  indicating that he reasonably relied on his belief that SNIC and AmTrust N.A., or their

9  employees, were AmTrust Financial's agents.  I therefore grant AmTrust Financial's motion for

10  summary judgment on all of Iovino's claims.

11  **B.  Breach of contract**

12  Iovino moves for summary judgment on his breach of contract claim, arguing that the

13  defendants should have paid $265,000 for his medical bills under the insurance contract, and any

14  exclusion because of payments made by a workers' compensation provider is void under Nevada

15  law.  The defendants respond that Nevada law does not permit double recoveries for the same

16  damages and that their exclusion of the workers' compensation amount is valid.

17  1.  Workers' compensation exclusion

18  Two years after his injury, Iovino made an initial demand for the $1,000,000 policy limit

19  and provided his medical records and physician's report to support that claim. ECF No. 161-4 at

20  10.  AmTrust N.A. reviewed this claim and paid Iovino $475,000. ECF No. 161-10 at 2.

21  AmTrust N.A.'s attorney later confirmed that this amount was for "pain, suffering, anxiety,

22  disfigurement and loss of enjoyment of life and not based [on] medical bills or loss of income."

23  ECF No. 164-21 at 2.  TopNotch's workers' compensation insurer, Insurance Company of the

West (ICW), has a lien for approximately $305,000 it has paid for medical bills and permanent

partial disability (PPD). ECF No. 164-20 at 2.  The defendants argue that they were allowed to

exclude expenses paid by workers' compensation under a provision of the UIM policy that states

the insurance does not apply to "[t]he direct or indirect benefit of any insurer or self-insurer

under any workers' compensation, disability benefits or similar law." ECF Nos. 164-3 at 24;

171-9 at 88; 171-14 at 15-16.

Iovino asserts that NRS § 616C.215(3)(c) voids this provision of the UIM policy.  That

section states that when an injured employee is eligible for compensation under the workers'

compensation statute and is entitled to proceeds under his employer's[3] UIM policy:

> (c) Any provision in the employer's policy of uninsured or underinsured vehicle
> coverage which has the effect of:
>
>> (1) Limiting the rights of the injured employee or the dependents of the
>> employee to recover proceeds under the policy because of the receipt of any
>> compensation pursuant to the provisions of chapters 616A to 616D,
>> inclusive, or chapter 617 of NRS;
>>
>> (2) Limiting the rights of subrogation of the insurer or Administrator
>> provided by paragraph (b); or
>>
>> (3) Excluding coverage which inures to the direct or indirect benefit of the
>> insurer or Administrator,
>
> is void.

The defendants argue that NRS § 616C.215(3)(c) applies only to claims that workers'

compensation insurers bring in subrogation against UIM insurers, not to claims by insureds such

as Iovino.  They support this assertion by pointing to NRS § 616C.215(5), which provides,

> In any case where the insurer or the Administrator [of workers' compensation] is
> subrogated to the rights of the injured employee . . ., the insurer or the

---

[3] The same restrictions do not apply to a personal UIM policy purchased by the employee. Nev.
Rev. Stat. § 616C.215(3)(b).

1   Administrator has a lien upon the total proceeds of any recovery from some person
2   other than the employer, whether the proceeds of such recovery are by way of
    judgment, settlement or otherwise.  The injured employee . . . [is] not entitled to
3   double recovery for the same injury . . . .

4   The defendants further argue that the Nevada Legislature added subsection (3)(c) in 2007 as a

5   response to the Supreme Court of Nevada's decision in *St. Paul Fire and Marine Insurance*

6   *Company v. Employers Insurance Company of Nevada*, which upheld provisions in an UIM

7   policy that restricted the right of a workers' compensation insurer to subrogate the rights of an

8   injured employee. 146 P.3d 258, 264-65 (Nev. 2006) (en banc).  In sum, the defendants contend

9   that subsection (3)(c) overturns *St. Paul* for the benefit of workers' compensation insurers, but

10  that § 616C.215(5) makes clear that an injured employee like Iovino cannot recover from both

11  the employer's UIM insurer and workers' compensation for the same medical bills because that

12  would give the employee a double recovery.

13      Although the timing and subject matter of *St. Paul* correspond with the changes to NRS

14  § 616C.215(3), the defendants do not point to anything in the legislative history for Nevada

15  Assembly Bill 496 (2007) explaining what the legislature intended with these changes, and I can

16  find nothing.  Prior to the 2007 amendments, the Supreme Court of Nevada held that provisions

17  in insurance policies that allowed the insurer to offset worker's compensation benefits did not

18  violate public policy. *See Phelps v. State Farm Mut. Auto. Ins. Co.*, 917 P.2d 944, 947-48 (Nev.

19  1996).  The court emphasized that "the goal of UM coverage is to make the claimant whole.  The

20  offset clause prevents a double recovery by the claimant." *Id.* (cleaned up).  But where an offset

21  results in the injured party receiving less than a full recovery, then the provision violates public

22  policy. *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 978 (Nev. 1990) (citing *Maxwell v.*

23  *Allstate Ins. Co.*, 728 P.2d 812 (Nev. 1986)); *see also Fernandez v. State Farm Mut. Auto. Ins.*

8

*Co.*, 338 F. Supp. 3d 1193, 1198-99 (D. Nev. 2018) (interpreting a workers' compensation offset in a personal UIM claim and concluding, "reduction clauses are enforceable to prevent a windfall or double recovery, and only if the insured will still be made whole by another means"). Neither party has identified, and I am unable to locate, any case interpreting the exclusions in § 616C.215(3)(c) for an employer-purchased UIM policy.

Consistent with this prior case law of allowing offsets where the insured would still be made whole but disallowing offsets that would grant a windfall to the insurer to the detriment of the injured employee, the Supreme Court of Nevada also previously concluded that a self-insured employer "would be unjustly enriched if it were permitted to assess its lien against the total proceeds of [a medical malpractice settlement] without bearing its share of litigation expenses." *Breen v. Caesar's Palace*, 715 P.2d 1070, 1074 (Nev. 1986). The court thus reduced the workers' compensation provider's recovery by a proportion of the insured's legal costs. *Id.* And under *Poremba v. Southern Nevada Paving*, a worker's compensation insurer that was entitled to reimbursement from third-party recoveries was "only entitled to reimbursement from the portions of third-party recovery allocated to expenses within the scope of workers' compensation." 388 P.3d 232, 234 (Nev. 2017) (en banc).

All of this changed recently when the Supreme Court of Nevada overruled *Breen* and *Poremba* in *AmTrust North America, Inc. v. Vasquez*, 555 P.3d 1164, 1166 (Nev. 2024) (en banc).[4] In *Vasquez*, the Supreme Court of Nevada held (1) that a worker's compensation insurer need not intervene in the injured worker's third-party claim to recover on its lien, (2) its lien is not reduced by any allocation of the injured employee's litigation fees and costs, and (3) the

---

[4] Although *Vasquez* was published only a week before the parties filed their motions for summary judgment, both parties cite to it and were therefore aware of the case and its potential impact on these proceedings. *See* ECF Nos. 164 at 24; 171 at 12.

worker's compensation insurer may collect from the "'total proceeds' of any recovery of an injured worker, including any portion allocated to noneconomic injuries." *Id.* at 1166.

Under *Vasquez* and NRS § 616C.215(8), Iovino is liable to ICW for the full amount of its $305,000 lien even if Iovino collects no additional money from the defendants. Consistent with the prior status quo in *Poremba*, ICW did not previously assert its lien against the $475,000 that AmTrust N.A. paid Iovino for pain and suffering. *See* ECF No. 171-10 at 9. But ICW is no longer limited by the characterization of Iovino's damages and may assess its lien against the money Iovino already collected or against any additional recovery, regardless of how that settlement is structured. And Iovino has an affirmative duty to notify ICW and pay the amount due if he receives any such recovery. *See* Nev. Rev. Stat. § 616C.215(8). Thus, the defendants' exclusion of payments made by workers' compensation and subject to a lien would leave Iovino less than whole.

The plain language of NRS § 616C.215(3)(c)(1) voids any UIM insurance policy provision "[l]imiting the rights of the injured employee . . . because of the receipt of any [workers'] compensation . . . ." That language does not support the defendants' argument that subsection (3)(c) is restricted to claims only for the benefit of workers' compensation insurers. And the prohibition against double recovery in NRS § 616C.215(5) does not rescue their argument because *Vasquez* makes clear that ICW is entitled to reimbursement from Iovino's third-party payment no matter how the parties categorize the damages. In other words, Iovino would not receive a double recovery for these payments because he is obligated to reimburse ICW. The defendants' workers' compensation exclusion is void under the plain language of subsection (3)(c) and as a matter of public policy.

/ / / /

       2.  Breach of contract

To prevail on his breach of contract claim, Iovino must establish that (1) a valid contract exists, (2) TopNotch performed, (3) the defendants breached, and (4) the breach caused Iovino damages. *Iliescu, Tr. of John Iliescu, Jr. and Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Trans. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. App. 2022). The defendants do not contest that there was a valid insurance contract between TopNotch and SNIC, of which Iovino was an intended beneficiary. The defendants also do not contest that TopNotch performed by paying the insurance premiums for the benefit of Iovino and other employees. Iovino seeks summary judgment on liability only, not damages.

No genuine dispute remains that SNIC breached the insurance contract by not paying Iovino's medical expenses. The UIM policy stated that SNIC would pay "all sums the insured is legally entitled to recover as compensatory damages from the owner of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured caused by an accident." ECF No. 161-3 at 2 (quotations omitted). SNIC's authorized claims administrator, AmTrust N.A., did not dispute the amount of medical bills Iovino submitted but did not pay those medical bills because they were paid by workers' compensation. ECF Nos. 161-5 at 3-5; 161-9 at 2. SNIC therefore had a duty under the contract to pay the medical bills and did not do so. As explained above, the workers' compensation exception the defendants rely on to excuse this breach is void under the plain language of NRS § 616C.215(c) and because it is against Nevada public policy. So I grant Iovino's motion for summary judgment on his breach of contract claim as to liability against SNIC.

AmTrust N.A. is not a party to the contract, so Iovino must establish its liability under the joint venture exception in *Bartgis*. Iovino has not identified undisputed facts in the record to

1    establish a joint venture between SNIC and AmTrust N.A.  And the defendants do not concede

2    that issue in their motion for summary judgment. ECF No. 164 at 16 n.1.  The existence of a

3    joint venture is an issue that must be established at trial, so I deny Iovino's motion for summary

4    judgment on his breach of contract claim against AmTrust N.A.

5         **D.  Bad Faith**

6         Iovino moves for summary judgment on his bad faith claim, arguing that the defendants

7    knowingly misrepresented their duty to pay his medical bills, refused to pay him the full amount

8    he claimed or provide a basis for the lower amount, and refused to reevaluate his claim when he

9    submitted additional information.  The defendants respond that Iovino misinterprets Nevada law,

10   did not demand the $265,000 in medical bills until well after litigation had commenced, and that

11   Iovino has not shown that the defendants knowingly undervalued his claim.

12        The defendants move for summary judgment on Iovino's bad faith claim arguing that

13   Iovino is not entitled to a double recovery of the amount already paid by workers' compensation,

14   that their valuation of the claim was reasonable, and that they negotiated settling the claim in

15   good faith.  They assert that the divergent values Iovino and AmTrust N.A. calculate for Iovino's

16   hedonic damages represent a "genuine dispute" and cannot support a bad faith claim. ECF No.

17   164 at 21.  Iovino responds by raising the same arguments he made in his motion for summary

18   judgment for bad faith.

19        Insurers have a special relationship with their insureds that arises under the implied

20   covenant of good faith and fair dealing. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev.

21   2009) (en banc).  "A violation of the covenant gives rise to a bad-faith tort claim." *Id.*  To

22   establish a claim for bad faith based on denial of payment on all or part of a claim, Iovino must

23   establish that "(1) [his] claim was denied, (2) the denial was unreasonable, and (3) the insurer

knew it lacked a reasonable basis to deny the claim, or acted with reckless disregard as to the unreasonableness of the denial." *Skinner v. GEICO Casualty Ins. Co.*, No. 2:16-cv-00078-APG-NJK, 2018 WL 1075035, at *5 (D. Nev. Feb. 26, 2018) (quotation omitted); *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) ("Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct."). "[T]he key to a bad faith claim is whether or not denial of the coverage was reasonable." *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669 (9th Cir. 2003).

Iovino has not demonstrated that the defendants acted in bad faith when they excluded his medical bills from their valuation. There is no evidence in the record indicating that the defendants and their employees knew that their interpretations of NRS §§ 616C.215(3) and (5) were incorrect. None of the defendants' employees testified that they knew the exclusion was void, or that they adjudicated similar cases differently. *See* ECF Nos. 171-8 at 22, 41; 178-6 at 46-47, 50-51; 178-15 at 27-28. Although I concluded above that Nevada law prohibits the workers' compensation exclusion after *Vasquez*, I also noted an extensive body of Nevada law that would support the defendants' interpretation at the time, giving the defendants a reasonable basis for their position.

Both Iovino and the defendants' behavior make sense in light of existing law under *Poremba*, which limited ICW's ability to recover from third-party payments that were not compensable under workers' compensation. Under that framework, any money AmTrust N.A. paid for the medical bills could be collected by ICW and would deplete Iovino's policy limits. Iovino, believing that his claim was worth most or all of the policy limit in hedonic damages, likely would not have wanted to so limit his recovery, and indeed he offered to fully resolve the

matter "for an additional $350,000 for pain and suffering." 164-22 at 2.[5]  This is no longer the law.  Indeed, under *Vasquez*, one could imagine an employee injured far worse than Iovino receiving more than $1,000,000 from workers' compensation and being left with nothing for his hedonic damages due to the ability of the workers' compensation insurer to recover from the employer's UIM policy.  In such a case, an employer's UIM policy would be rendered mere "insurance for their insurance" and might make employers less likely to purchase such coverage.  *See St. Paul*, 146 P.3d at 264 (quotation omitted).  However, balancing such policy considerations is a task for the Nevada Legislature, not for this court.  *See Vasquez*, 555 P.3d at 1171 (directing litigants and courts to "rely wholly upon NRS 616C.215(5) and applicable surrounding statutes when adjudicating workers' compensation liens," and returning the regulatory issue to the Legislature).

No genuine dispute remains that the defendants had a reasonable basis for their interpretation of Nevada law prior to *Vasquez*.  There are no genuine issues of material fact from which a juror could infer that the defendants knew this interpretation was incorrect, and the parties behaved as though the exclusion was valid until after litigation had commenced.  I therefore grant the defendants' motion for summary judgment on Iovino's bad faith claim to the extent it is based on excluding Iovino's medical bills paid by ICW.  And I deny Iovino's motion on these same grounds.

---

[5] Iovino asserts that he is seeking in this suit the $265,000 in medical bills, of which ICW paid out just over $104,000. ECF No. 164-20 at 2.  Iovino does not indicate that he owes his medical providers the difference, and allowing him to keep the difference would bolster the defendants' belief that he was seeking an improper double recovery. *See Luna v. State Farm Mut. Auto. Ins. Co.*, No. 2:15-cv-01104-RCJ-NJK, 2016 WL 4699692, at *3 (D. Nev. Sept. 7, 2016) (noting that it would be appropriate, in a personal UIM policy, to exclude the difference between billed amount and amount negotiated by workers' compensation to avoid a double recovery because the plaintiff was already made whole).

Genuine disputes of material fact remain about whether Iovino and AmTrust N.A.'s disparate valuations of the claim were reasonable and whether the defendants adequately justified their valuation.  For example, a jury will need to resolve whether AmTrust N.A.'s claims adjuster reasonably valued Iovino's claim at $475,000 when she reviewed the policy limits demand and came up with a number based on her experience handling similar claims. ECF Nos. 164-14 at 12-13; 161-5 at 10-11.  It will also be up to the jury whether AmTrust N.A. reasonably refused to increase that valuation based on Iovino's supplemental demand and expert report and its own rebuttal expert report. *See* ECF Nos. 171-16 at 14-15; 164-29.  A jury must gauge the credibility of these professionals and experts to decide whether the defendants had a reasonable basis for their claims handling.  I therefore deny both Iovino and the defendants' motions for summary judgment on the bad faith claim as to the value of Iovino's damages. Because the same questions of fact for the bad faith claim underly whether Iovino can pursue punitive damages, I also deny the defendants' request to strike the prayer for punitive damages.

### E.  Unfair Claims Practices

Iovino moves for summary judgment on his claims for unfair claims practices, arguing that the defendants intentionally misrepresented the UIM policy's terms by relying on the workers' compensation exclusion, and that the defendants refused to provide an explanation for their initial payment of $475,000 or for their denial of Iovino's supplemental claim and expert evaluation.  The defendants respond that Iovino lacks standing to bring these claims because he failed to exhaust administrative remedies by first seeking relief with the Nevada Insurance Commissioner.  The defendants further argue that Iovino has not demonstrated damages from the alleged acts, the defendants' interpretation of the exclusion provision is correct, and that Iovino is not entitled to an itemized breakdown of the hedonic damages payment.

The defendants move for summary judgment on these claims based on the same failure to exhaust administrative remedies and lack of damages arguments they raised in opposition to Iovino's motion.  AmTrust N.A. separately argues that it is entitled to summary judgment on these claims because the Nevada Unfair Claims Practices Act applies only to "insurers" and AmTrust N.A. is a claims administrator.  Iovino responds that the specific provisions he sues under allow a private cause of action, the defendants misrepresent Nevada law, the defendants refused any explanation for their calculations, and the three companies acted in concert, making them all susceptible to suit.

Iovino asserts violations of two provisions of the Nevada Unfair Claims Practices Act

1. "Misrepresenting to insureds or claimants pertinent facts or insurance policy provisions relating to any coverage at issue" under NRS § 686A.310(1)(a); and

2. "Failing to provide promptly to an insured a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of the claim or for an offer to settle or compromise the claim" under NRS § 686A.310(1)(n).

Although the Nevada Insurance Commissioner has exclusive jurisdiction to regulate insurance trade practices, an insured may sue for damages for violations of § 686A.310(1). Nev. Rev. Stat. §§ 686A.015; 686A.310(2); *Meehan v. State Farm Mut. Auto. Ins. Co.*, No. 2:23-cv-00774 JCM (BNW), 2024 WL 4132743, at *5 (D. Nev. Sept. 9, 2024).

### 1.  AmTrust N.A.

AmTrust N.A. is entitled to summary judgment on these claims because it is not an insurer.  The Supreme Court of Nevada has held that NRS § 686A.310 applies only to "an insurer or company within the meaning of the applicable statutory law." *Bartgis*, 969 P.2d at

959-60; *see also* NRS § 686A.310(2) (stating that "an insurer is liable to its insured" for

violations of the NRS § 686A.310(1)).  There is no evidence in the record that AmTrust N.A. is

an insurer or a company covered by § 686.310.  Rather, the defendants' Rule 30(b)(6) deponent

testified that SNIC sells insurance policies and AmTrust N.A. administers its claims along with

other AmTrust insurance carriers. ECF No 171-14 at 10.  I therefore grant summary judgment to

AmTrust N.A. for Iovino's unfair practices claims.

### 2. Exhaustion and Damages

SNIC's damages and failure to exhaust administrative remedies arguments do not warrant

summary judgment in its favor.  First, if Iovino is correct that the defendants misrepresented the

validity of their workers' compensation exclusion, then he is damaged by the amount that was

excluded.  A reasonable juror may also infer that he was damaged by the lack of explanation for

the defendants' much lower value for his claim because he could not know what additional

evidence was lacking to support the higher amount he was claiming or why the evidence he

provided was insufficient.  Second, Iovino has standing to bring these claims without first

exhausting his claims before the Nevada Insurance Commissioner because NRS § 686A.310(2)

explicitly authorizes an insured to bring an action "for any damages sustained by the insured as a

result of the commission of any act set forth in subsection 1 as an unfair practice." *See also*

*Cuadros v. State Farm Fire and Cas. Co.*, No. 2:16-cv-2025 JCM (VCF), 2017 WL 2683681, at

*3 (D. Nev. June 20, 2017).  Both of Iovino's unfair claims practices claims stem from

subsection 1.[6]  Nothing in § 686A.310(2) suggests that an insured must first exhaust

---

[6] The defendants rely on *Hwang v. Redwood Fire and Casualty Insurance Company* for the proposition that Iovino must exhaust his administrative remedies. 714 F. Supp. 3d 1280, 1287 (D. Nev. 2024).  Although the *Hwang* court implies that claimants under § 686A.310 must first exhaust administrative remedies, the court dismissed that claim for being vague and conclusory about a breach of "statutory duties," suggesting that the claim was based on statutory duties that

administrative remedies with the Commissioner before suing an insurer for violations of § 686A.310(1).  I thus deny the defendants' motion for summary judgment on the unfair trade practices claims as to SNIC.

### 3.  Merits

#### i.  *NRS § 686A.310(1)(a)*

Iovino moves for summary judgment on the merits, arguing that the defendants misrepresented that the workers' compensation exclusion excused them from paying for Iovino's medical bills.  The defendants respond that the exclusion is valid under Nevada law.  The defendants did not move for summary judgment on the merits beyond their exhaustion and damages arguments addressed above.

An insurer commits an unfair claims practice by misrepresenting to an insured "pertinent facts or insurance policy provisions relating to any coverage at issue." Nev. Rev. Stat. § 686A.310(1)(a).  As discussed above, Iovino is correct that the workers' compensation exclusion is void under Nevada law.  But, as I noted in my bad faith analysis, the defendants had a reasonable basis for their interpretation of Nevada law at the time they represented to Iovino that the exclusion applies, and there are no facts in the record showing that the defendants knew that their interpretation was incorrect.  So, I deny Iovino's motion for summary judgment as to NRS § 686A.310(1)(a).

/ / / /

---

fall within the exclusive jurisdiction of the Commissioner. *Id.* at 1287-88.  The plain language of NRS § 686A.310(2) provides a private right of action, and courts in this district regularly allow such actions to proceed without requiring exhaustion based on the Commissioner's exclusive jurisdiction. *See e.g.*, *Meehan*, 2024 WL 4132743, at *5; *Caudros*, 2017 WL 2683681, at *3; *Free Speech Found. v. Philadelphia Indemnity Ins. Co.*, No. 2:23-cv-01407-MMD-BNW, 2024 WL 3202771, at *8 (D. Nev. June 26, 2024).

1          *ii.  NRS § 686A.310(1)(n)*

2          Iovino notes that his initial demand for the $1,000,000 policy limit was supported by

3 medical bills and a physician's summary and PPD determination.  He argues that because the

4 defendants did not present an itemized breakdown of the various hedonic damages in their

5 $475,000 pain and suffering payment, their explanation for that amount cannot be reasonable.

6 The defendants respond that their adjusters testified that they made a holistic evaluation of the

7 claim, valuing it at $475,000, and that the statute does not require an itemized breakdown of the

8 payment.

9          An insurer commits an unfair claims practice by failing to provide an insured "a

10 reasonable explanation" for a denial or offer to settle a claim. Nev. Rev. Stat. § 686A.310(1)(n).

11 In Nevada, hedonic damages such as pain and suffering are "wholly subjective." *See Stackiewicz*

12 *v. Nissan Motor Corp. in U.S.A.*, 686 P.2d 925, 932 (Nev. 1984) (quotation omitted).  All of the

13 $475,000 AmTrust N.A. paid Iovino was for pain and suffering. ECF No. 170-2 at 5-6.  AmTrust

14 N.A.'s adjuster testified that she came up with this value by reviewing everything in the file and

15 valuing the claim based on her experience. ECF No. 161-5 at 4-8.  Whether the claims adjuster's

16 actions and explanations for these subjective damages were reasonable are disputed material

17 facts for the jury to decide.  I therefore deny Iovino's motion for summary judgment on his

18 unfair claims practices claim based on NRS § 686A.310(1)(n).

19          **F.  Fraud**

20          Iovino's remaining fraud claim is based on his allegation that the defendants fraudulently

21 induced him to take part in a mediation to delay the litigation.  The defendants move for

22 summary judgment on this claim, arguing that they participated in the mediation in good faith

23 and that Iovino has not demonstrated any damages from participating in the mediation.  Iovino

does not directly respond to these arguments but asserts that the defendants' negotiator not

offering to settle up to the full amount of her authority and refusing to obtain additional authority

during mediation shows bad faith.

To prevail on a fraud claim in Nevada, Iovino must prove (1) a false representation,

(2) the defendants knew or believed that the representation was false, (3) the defendants intended

to induce Iovino's reliance, (4) Iovino justifiably relied on the representation, and (5) damages.

*Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021).

The AmTrust N.A. claims adjuster who participated in the mediation testified that she

was authorized to resolve the claim for up to an additional $275,000, but that she discontinued

the mediation when she realized that Iovino was seeking $500,000 in excess of the million-dollar

policy limit. ECF No. 164-23 at 31-34. She also testified that she intended to make incremental

offers if Iovino had shown that he was willing to decrease his demands, but concluded

negotiation was futile when he increased his demand. *Id.* at 28-30. AmTrust N.A. also paid for

the mediation and agreed to waive the statute of limitations for 90 days if Iovino participated.

ECF No. 164-28 at 2, 4. Iovino does not dispute these facts or offer any evidence to support the

false representation or damages elements of his fraud claim. I therefore grant the defendants'

motion for summary judgment on this claim.

## II. MOTION TO STRIKE

Iovino filed a separate motion to strike the defendants' answer for discovery abuses under

Federal Rule of Civil Procedure 37. ECF No. 162. He argues that the defendants repeatedly

delayed presenting their Rule 30(b)(6) deponent, failed to adequately prepare her, and that she

did not testify about her personal knowledge or post-litigation conduct. The defendants respond

that Iovino already raised many of these issues before Magistrate Judge Koppe, that the

depositions eventually took place prior to the discovery cutoff deadline, and that Iovino sought privileged information.

I have authority to issue sanctions against parties for failing to comply with court orders "to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A).  I also have "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Anheuser-Busch, Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 348 (9th Cir. 1995) (quotation omitted).  Before issuing case-terminating sanctions, I must consider five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Transamerica Life Ins. Co. v. Arutyunyan*, 93 F.4th 1136, 1146 (9th Cir. 2024) (cleaned up).  "Only willfulness, bad faith, and fault justify terminating sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (quotation omitted).

Although the defendants have engaged in disruptive behavior during discovery, including filing last-minute protective orders and objecting to nearly every question during depositions, that conduct does not rise to the level necessary to justify terminating sanctions.  Iovino has unsuccessfully litigated many of the issues he complains of in this motion, filing ten motions to compel evidence.[7]  He cannot claim that he was prejudiced by the defendants' willfulness, bad faith, or fault where the defendants were not compelled to deliver his desired evidence.  Finally, Iovino asserts that "lesser sanctions are not sufficient to cure the prejudice." ECF No. 162 at 23.

---

[7] ECF Nos. 38; 92; 97; 98; 106; 112; 113; 142; 159; 180.  Iovino appealed many of these magistrate judge orders to me and I affirmed. *See* ECF Nos. 79; 174; 198.

Because I find that the defendants' conduct is not severe enough to warrant the harsh sanction of striking their answer and Iovino offers no alternative for lesser sanctions, I deny his motion to strike.

**III. CONCLUSION**

I THEREFORE ORDER that plaintiff Carmen Iovino's motion for summary judgment **(ECF No. 161) is GRANTED in part**. I grant the motion as to liability against defendant Security National Insurance Company for breach of contract. I deny it as to all other claims.

I FURTHER ORDER that defendants AmTrust Financial Services, Inc., AmTrust North America, and Security National Insurance Company's motion for summary judgment **(ECF No. 163) is GRANTED in part**. I grant the motion on all claims as to defendant AmTrust Financial Services, Inc. I grant the motion as to all defendants on the bad faith claim to the extent it is based on excluding Iovino's medical bills paid by workers' compensation. I grant the motion as to defendant AmTrust North America on the claims for fraud and unfair claims practices. And I grant the motion as to Security National Insurance Company on the fraud claim.

I FURTHER ORDER that plaintiff Carmen Iovino's motion to strike **(ECF No. 162) is DENIED**.

DATED this 13th day of March, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE