# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

CARMEN IOVINO,

     Plaintiff

v.

AMTRUST FINANCIAL SERVICES, INC., et al.,

     Defendants

Case No.: 2:22-cv-01974-APG-NJK

**Order (1) Granting Motion to Strike, (2) Denying Motion for Leave to File Supplement (3) Denying Motion for Reconsideration, and (4) Granting Motion to Seal**

[ECF Nos. 210, 215, 218, 221]

Plaintiff Carmen Iovino moves for reconsideration of my summary judgment order (ECF No. 207) on three grounds. First, Iovino argues that there are issues of fact regarding whether the defendants acted in bad faith because although the defendants could have relied on Nevada law to not pay his medical bills that were covered by workers' compensation, there is no evidence that they did so and instead they relied on their own policy exclusion without investigating Nevada law. Second, Iovino argues there are genuine disputes regarding whether AmTrust Financial Services, Inc. is a proper party. Finally, Iovino argues that I should reconsider my decision not to strike the defendants' answer because I did not previously consider lesser sanctions, and I should do so now. Defendants Security National Insurance Company (SNIC), AmTrust North America (ANA), and AmTrust Financial Services, Inc. (AmTrust Financial) respond that the motion for reconsideration merely restates arguments I have already rejected or raises new arguments that could and should have been raised previously.

After briefing on the reconsideration motion was complete, Iovino filed a "supplemental reply" without moving for leave to file it. That prompted the defendants to move to strike the supplemental reply as unauthorized. Alternatively, the defendants request leave to file a

response if I am going to consider the supplemental reply.  Iovino thereafter filed a motion for leave to file another supplement, which the defendants oppose and again request leave to file a response if I consider Iovino's supplement.

The parties are familiar with the facts and procedural history, so I repeat those here only as necessary to resolve the pending motions.  I grant the motion to strike, I deny the motion for leave to file a second supplement, and I deny the motion for reconsideration.  Finally, I grant Iovino's unopposed motion to seal.

## I.  MOTION TO STRIKE

Under Local Rule 7-2(g), a "party may not file supplemental pleadings, briefs, authorities, or evidence without leave of court granted for good cause.  The judge may strike supplemental filings made without leave of court."  Iovino did not seek leave to file the first supplement.  I therefore grant the defendants' motion to strike to the extent I will not consider ECF No. 217 in resolving the motion for reconsideration.  However, I do not order it stricken from the record for purposes of appeal.

## II.  MOTION FOR LEAVE TO FILE SECOND SUPPLEMENT

Iovino moves for leave to file a second supplement to the motion for reconsideration, arguing that the defendants have engaged in additional bad faith conduct that would support reconsideration.  Specifically, Iovino argues that AmTrust paid the workers' compensation lien directly to the workers' compensation carrier, ICW, instead of paying it to Iovino, who then could have negotiated with ICW.

In considering whether to grant leave to supplement under LR 7-2(g), I evaluate whether the requesting party was reasonably diligent in seeking leave to do so and whether "the proposed briefing will make a substantive difference." *Chemeon Surface Tech., LLC v. Metalast Int'l, Inc.*,

No. 3:15-cv-00294-CLB, 2023 WL 1765704, at *7 (D. Nev. Feb. 3, 2023); *see also De Luna v. Sunrise Hosp. & Med. Ctr., LLC*, Case No. 2:17-cv-01052-JAD-VCF, 2018 WL 4053323, at *5 (D. Nev. Aug. 24, 2018).

I deny the motion to supplement because Iovino was not reasonably diligent.  The proposed supplement is based on Iovino "learn[ing]" on July 22, 2025 that the defendants paid the ICW lien directly to ICW. ECF No. 222 at 2.  But Iovino knew as early as April 30, 2025 that the defendants were going to do that. ECF No. 222-4 at 4 (April 30 letter to ICW and Iovino's counsel asking to confirm (1) the amount of the check to cover ICW's lien and (2) that the check should be made out to ICW and sent to ICW's address).  And Iovino knew as of May 20 that the defendants had in fact paid ICW directly. ECF No 222-5 (May 20 letter from Iovino's counsel to the defendants' counsel to "provide all information surrounding the decisions to pay the ICW lien" and questioning why some of the money was paid "to ICW instead of Mr. Iovino").  Even if I considered the parties' subsequent correspondence where Iovino sought an explanation of this payment, the defendants twice defended their position by June 23. ECF Nos. 222-6; 222-8. But Iovino waited until October 30 to move for leave to supplement. ECF No. 221.  Iovino thus was not reasonably diligent in seeking leave to supplement.

Moreover, Iovino's complaints about how the defendants handled the payment to ICW will not make a substantive difference in my resolution of the motion for reconsideration.  The reconsideration motion is based on Iovino's argument that a reasonable jury could find that during claims handling, the defendants did not actually rely on Nevada law when deciding they could offset workers' compensation payments.  The defendants' actions related to the ICW payment do not relate to their reliance (or lack thereof) on Nevada law in determining whether they could offset workers' compensation payments.  Indeed, the payment to ICW occurred

1  because of my summary judgment decision that made it clear that the defendants could not offset

2  worker's compensation payments.  I therefore deny the motion to supplement.

3  **III.  MOTION FOR RECONSIDERATION**

4         A district court "possesses the inherent procedural power to reconsider, rescind, or

5  modify an interlocutory order for cause seen by it to be sufficient," so long as it has jurisdiction.

6  *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)

7  (simplified); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12

8  (1983) (citing Fed. R. Civ. P. 54(b)).  "Reconsideration is appropriate if the district court (1) is

9  presented with newly discovered evidence, (2) committed clear error or the initial decision was

10 manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J,*

11 *Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A district court also

12 may reconsider its decision if "other, highly unusual, circumstances" warrant it. *Id.*

13        However, "[m]otions for reconsideration are disfavored." LR 59-1(b).  "A motion for

14 reconsideration is not an avenue to re-litigate the same issues and arguments upon which the

15 court already has ruled." *In re AgriBioTech, Inc.*, 319 B.R. 207, 209 (D. Nev. 2004).

16 Additionally, a motion for reconsideration may not be based on arguments or evidence that could

17 have been raised previously. *See Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th

18 Cir. 2000).

19        **A.  I deny reconsideration on the bad faith claim because Iovino points to no**

20        **evidence that SNIC or ANA knew or should have known that their obligation to pay**

21        **Iovino's medical bills had become due.**

22        Iovino argues that there are genuine disputes about whether the defendants relied on

23 Nevada law to decide not to pay him for medical bills that workers' compensation paid on his

behalf.  Iovino points to a notation in the insurance claim file in which a manager stated "[t]he [workers' compensation] lien will not reduce our exposure.  Why would it?" ECF No. 210-5 at 27.  Iovino asserts that "[n]o response to [the manager's] position was ever noted in the claims file," and no analysis regarding Nevada law is noted in the claims file. ECF No. 210 at 3.  He asserts that ANA relied on Nevada law late in this litigation, not during the initial claim evaluation.  And he contends that the defendants did not reevaluate his claim under Nevada law when he asserted in June 2024 that SNIC had to pay his medical bills.  Iovino thus contends that because there is no evidence that the defendants relied on Nevada law, there are issues of fact whether the defendants' failure to pay the medical bills was reasonable.

To establish a claim for bad faith based on denial of payment on all or part of a claim, Iovino must establish that "(1) [his] claim was denied, (2) the denial was unreasonable, and (3) the insurer knew it lacked a reasonable basis to deny the claim, or acted with reckless disregard as to the unreasonableness of the denial." *Skinner v. GEICO Casualty Ins. Co.*, No. 2:16-cv-00078-APG-NJK, 2018 WL 1075035, at *5 (D. Nev. Feb. 26, 2018) (quotation omitted); *Guaranty Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996) ("Bad faith is established where the insurer acts unreasonably and with knowledge that there is no reasonable basis for its conduct.").

Iovino presents no evidence that SNIC and ANA knew or should have known that they had to pay the medical bills that workers' compensation had paid.  As I set forth in my prior order, until recently Nevada law allowed insurers to offset payments made by workers' compensation "where the insured would still be made whole but disallowing offsets that would grant a windfall to the insurer to the detriment of the injured employee." *Iovino v. Am Tr. Fin. Servs., Inc.*, 776 F. Supp. 3d 889, 899 (D. Nev. 2025).

The claim handling notes indicate that the fact that workers' compensation was paying Iovino's medical bills factored into AmTrust N.A.'s analysis from the outset. *See* ECF No. 210-5 at 46 (January 2017 note that "WC is paying bills"), 43 (January 2017 note regarding whether the insured has "WC and if so, what are the limits"), 30 (November 2017 note regarding Iovino and the workers' compensation insurance carrier disputing coverage).

In February 2018, an adjuster noted that a "WC lien will be included which will lower our exposure." ECF No. 210-5 at 30. A manager responded with a claim note that stated the "WC lien will not reduce our exposure. Why would it?" *Id.* at 24, 27-28. Iovino contends this note shows that ANA knew that it had to pay the workers' compensation lien.[1] And if this note stood alone, then viewing the facts in the light most favorable to Iovino, a genuine dispute would remain regarding whether ANA knew or should have known it had to pay the medical bills.

But subsequent notes in the claim file show that ANA questioned whether it was "allowed any offset in Nevada" for workers' compensation or health insurance. *Id.* at 20. And it later answered that question for itself in the affirmative. A May 2019 claim note stated that "it should be noted that the policy contains anti-stacking provisions for UM, Medpay is excluded due to course & scope/WC." *Id.* at 16. A June 2019 note also stated that "[w]e are entitled to the WC offset and our UM exposure." *Id.* at 11. And an April 2022 claim note states "***WC Offset allowed in this venue. UIM requirement is to close any gap that exists above what's been

---

[1] The defendants argue that this note reflects the reality that the workers' compensation lien would not reduce their overall exposure because ICW could directly pursue them for any medical bills that workers' compensation paid for Iovino. And the defendants point to claims adjuster Kara Miller's testimony that she understood that ICW had a lien against the defendants to "recover it back from us." ECF No. 164-14 at 15. While that may explain the note, there is no testimony from the person who wrote the note that this is what he or she meant, so I do not ascribe that meaning to the note, as doing so would not view the facts in the light most favorable to Iovino.

paid by WC." *Id.* at 5.  That language closely tracks the Nevada case law that I outlined in my prior order. *See* ECF No. 207 at 8-10.

Iovino repeatedly states in his reconsideration motion that ANA was relying on "outdated" Nevada law. *See* ECF No. 210 at 3, 11, 14-15.  But the law was not outdated when ANA was evaluating Iovino's claim.  As I set out in my prior order, ANA's position was consistent with Nevada case law until November 2024, when the Supreme Court of Nevada issued *AmTrust North America, Inc. v. Vasquez*, 555 P.3d 1164, 1166 (Nev. 2024) (en banc). *See* ECF No. 207 at 9-10.  Iovino presents no evidence that ANA knew or recklessly disregarded that its position, which was based on published caselaw in this state, was faulty.  The fact that ANA was a litigant in *Vasquez* does not change that result.  ANA sought and obtained a change in Nevada law in *Vasquez*. 555 P.3d at 1171 (overruling *Breen v. Caesars Palace*, 715 P.2d 1070 (Nev. 1986) and *Poremba v. S. Nev. Paving*, 388 P.3d 232 (Nev. 2017)).  Until the Supreme Court of Nevada issued *Vasquez*, the defendants' position reflected in the claims handling notes in Iovino's case was consistent with the Supreme Court of Nevada's published case law.  Iovino does not explain how the defendants could know that they would succeed in convincing the Supreme Court of Nevada to overrule its own case law, including a fairly recent decision from 2017.  So no reasonable jury could find that the defendants knew or should have known that they had to pay Iovino's medical bills despite that case law.  I therefore deny Iovino's motion for reconsideration on this basis.

**B.  No genuine dispute remains that AmTrust Financial is not a proper party.**

Iovino moves for reconsideration of my ruling that AmTrust Financial is not a proper party.  He relies on arguments that have been previously raised and rejected.  He also points to a brochure that states that "AmTrust is one of the largest privately held insurance and risk carriers

1   globally.  As a private enterprise, we take a long-term perspective and work for the future by

2   investing in innovation, data science, and digital partnerships to improve risk selection, customer

3   experience, and operational efficiency." ECF No. 210-3 at 4.  Iovino could have presented that

4   exhibit at summary judgment and did not.  He cannot point to it for the first time on a motion for

5   reconsideration.  Additionally, the brochure does not raise an issue of material fact regarding

6   whether AmTrust Financial "developed promotional material, issued policies, billed and

7   collected premiums, paid and adjudicated claims, assisted the insurer in the development of

8   policy language, and shared in the insurer's profits." ECF No. 207 at 4 (simplified).  I therefore

9   deny Iovino's motion for reconsideration on this point.

10        **C.  I will not consider lesser sanctions on reconsideration when Iovino did not**

11        **suggest alternative sanctions in his original motion to strike.**

12        Iovino argues that I erred by not considering lesser sanctions for the defendants'

13   discovery misconduct.  He asserts that even though he did not suggest lesser sanctions, and

14   instead requested that I not give lesser sanctions, I nevertheless "must" consider lesser sanctions

15   under *Hester v. Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012). ECF No. 210 at 23

16   (emphasis omitted).

17        Iovino misreads *Hester*.  That case states that before I impose dispositive sanctions like

18   striking a pleading or declaring a default, I must consider certain factors, including the

19   availability of less drastic sanctions.  In other words, I cannot strike a pleading or declare a

20   default unless I have considered lesser sanctions and determined that those lesser sanctions were

21   insufficient to address the misconduct.[2]  But Iovino states no law holding that if I have decided

22

23   _____
    [2] *See, e.g.*, *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006) ("In reviewing whether the
    district court properly considered lesser sanctions prior to dismissing Leon's case, we examine
    . . . whether the district court explicitly discussed the feasibility of less drastic sanctions and

1    that striking an answer is not an appropriate sanction, I must nevertheless consider lesser

2    sanctions where the party moving to strike has affirmatively disavowed lesser sanctions.[3]  Iovino

3    could have maintained his position that striking the answer was the appropriate response while

4    arguing in the alternative that if I did not agree, at a minimum, I should impose some other

5    sanctions.  He did not do so, and he thus did not explain why another sanction would be

6    appropriate under the circumstances.

7        The time to request and identify an appropriate lesser sanction was during briefing on the

8    motion to strike.  Having shot for the moon and fallen short, Iovino cannot now come back on

9    reconsideration and request lesser sanctions that he could and should have requested in prior

10   briefing.  I therefore deny his motion for reconsideration on this ground.

11   / / / /

12   / / / /

13   / / / /

14   _____

15   explained why such alternate sanctions would be inappropriate . . . ."); *In re*
     *Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) ("The

16   district court abuses its discretion if it imposes a sanction of dismissal without first considering
     the impact of the sanction and the adequacy of less drastic sanctions." (simplified)); *Anheuser-*

17   *Busch, Inc. v. Nat. Beverage Distributors*, 69 F.3d 337, 352 (9th Cir. 1995) ("In determining
     whether a district court has properly considered the adequacy of less drastic sanctions before

18   dismissing a party's case, we consider . . . whether the district court explicitly discussed the
     feasibility of less drastic sanctions and explained why such alternate sanctions would be

19   inappropriate . . . ."); *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) ("Because the
     sanction of dismissal is such a harsh penalty, the district court must weigh five factors before

20   imposing dismissal," including "the availability of less drastic sanctions." (quotation omitted)).

     [3] *See* ECF No. 162 at 23 ("Finally, while this Court could consider lesser sanctions, those lesser

21   sanctions are not sufficient to cure the prejudice; more so, lesser sanctions such as compelling
     discovery or assessing monetary fines are minuscule to these Defendants."); 173 at 12-13

22   ("Plaintiff asserts that case-terminating sanctions are appropriate in light of Defendants' conduct.
     While the Court must consider the availability of less drastic sanctions pursuant to *Hester v.*

23   *Vision Airlines, Inc.*, 687 F.3d 1162, 1169 (9th Cir. 2012), Plaintiff asserts that compelling
     additional discovery or assessing a monetary sanction will not remedy the harm to Plaintiff, and
     it will not curb Defendants' intentional conduct.").

**III.  CONCLUSION**

I THEREFORE ORDER that the defendants' motion to strike **(ECF No. 218) is GRANTED** in that I will not consider ECF No. 217 in resolving the motion for reconsideration, but I do not order it stricken from the record.

I FURTHER ORDER that the plaintiff's motion for leave to supplement **(ECF No. 221) is DENIED**.

I FURTHER ORDER that the plaintiff's motion for reconsideration **(ECF No. 210) is DENIED**.

I FURTHER ORDER that that the plaintiff's motion to seal **(ECF No. 215) is GRANTED**.  The clerk of court is directed to seal ECF No. 214-2.

DATED this 5th day of December, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE